IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TOREY CORTEZ SMITH**                                                           **PLAINTIFF**

**VS.**                                                                         **CIVIL ACTION NO. 3:14CV573-LRA**

**MORRIS TOWNSEND, ET AL**                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants' Motion for Summary Judgment [54] and Plaintiff's written response and sworn testimony supporting his claims. Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff is a convicted felon who was brought to the Hinds County Detention Center [HCDC] on May 12, 2014, as a Mississippi Department of Corrections [MDOC] parolee to await a probation revocation hearing. He was transported there from Magee, Mississippi, by a probation officer.

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  In support of their motion, Defendants have submitted the omnibus hearing transcript; the "Jail Personal Arrest Report;" and, the Inmate Health Services Plan and the Inmate Grievance Procedures of the HCDC Policies and Procedures manual.

Plaintiff testified that he was originally housed at HCDC in C-1 on May 12, 2014. Due to his sexuality and due to the psychiatric medications that he took, he was soon transferred to C-2.  While housed there for approximately 2-3 weeks, he had no showers, no lights in his cell, and he was not allowed grooming.  He was fed cold food under the door and was on 24-hour lockdown.  Plaintiff was supposed to receive his medication three times a day, but he was not allowed out of his cell enough to get the medication three times, primarily because Defendant Karl Brown would not let him go to medical during his shift.  Plaintiff would get his medicine, just not all three doses each day.  There were no administrative officers to speak to in order to have the conditions improved.  He received no response to any grievance he filed.  He did speak to the mental health worker and complained to her.  He asked Defendant Townsend if he could be moved to the downtown facility, and his request was granted.

Plaintiff testified that he remained in HCDC from May 12, 2014, through the first week of June, 2014, or about three weeks.  He remained downtown until the end of July 2014 and was then released from Hinds County.  He spent about 2-3 weeks under the poor conditions before being moved downtown, where his conditions improved.  Because of the allegedly unconstitutional conditions under which he was housed during the first

2

weeks, Plaintiff says he became extremely depressed, suffered from a loss of appetite, and lost 15 pounds.

Smith sued Defendants Sheriff Lewis, Karl Brown, Morris Townsend, and Shannon Brumfield in their individual and official capacities, and each Defendant asserts that he is entitled to qualified immunity.  The remaining named Defendants have not been served with process, and no additional addresses have been provided.  Qualified immunity promotes the necessary, effective, and efficient performance of government duties, *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violated the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986);  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009);  *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).  When a defendant asserts this defense, the plaintiff has the burden of proving that it is inapplicable.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *Atteberry v. Nocona General Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005).  To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established federal constitutional or statutory right and that the official's actions violated that right to the extent that an objectively reasonable person would have known.  *Malley,* 475 U.S. at 341.

A two-part analysis is applied in assessing a claim of qualified immunity.  First, the Court must determine whether Smith's allegations even establish a constitutional violation.  *Hope v. Pelzer,* 536 U.S. 730, 736 (2002).  "If "no constitutional right would have been violated were the allegations established, there is no necessity for further

inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001). If a violation is made out, then the Court must determine whether the right was "clearly established." For the reasons that follow, the Court finds that Smith has failed to rebut Defendants' assertions by competent evidence.

Plaintiff was in the HCDC because his probation officer brought him there from Magee to await a revocation hearing in Hinds County. Although a detained parolee, the Court will analyze his claims in the standard more favorable to him, that of a pretrial detainee. Pretrial detainees have a due process right not to be subjected to jail conditions that constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). "Punishment" may be "the manifestation of an explicit policy or restriction." *Shepherd v. Dallas Cnty.,* 591 F.3d 445, 453 (5th Cir. 2009). It can also be manifested by a *de facto* policy if a pattern of conduct or condition is sufficiently extensive or pervasive such that intent to punish may be presumed. *Id.* at 452. Furthermore, the punishment is impermissible only if it bears no reasonable relationship to a legitimate governmental interest and if it causes a violation of a detainee's constitutional rights. *Duvall v. Dallas Cnty.,* 631 F.3d 203, 207 (5th Cir. 2011). A constitutional violation occurs when the complained of condition results in "serious deficiencies" in providing for the detainee's "basic human needs." *Shepherd*, 591 F.3d at 454.

Plaintiff's own testimony negates an intent to punish on the part of these Defendants. For example, he testified that when he complained about the conditions to

Defendant Captain Townsend and asked to be moved downtown, Captain Townsend told him "... I'm going to do you a favor. ... I'm going to move you downtown." [54-1, p. 8]. This testimony defeats any claim of intent to punish on the part of Defendant Townsend, and no constitutional claim can be established under these circumstances as to him. As to Defendant Lieutenant Broomfield, Plaintiff testified that he was "able to talk with her occasionally because she normally walks around C pod" but that she would not "address the issues" that he brought to her. This is Plaintiff's only claim against Defendant Broomfield, and his testimony is likewise insufficient to support a showing of an intent to punish Plaintiff.

The Court finds that the conditions about which Plaintiff complains in this lawsuit were not so deplorable so as to violate the United States Constitution. Smith was subjected to the conditions about which he complained from on or about May 12, 2014, through the first week in June, 2014, or about three weeks. Soon thereafter, he was moved downtown, at his request, and his conditions improved. Although harsh, the conditions for those three weeks were not so deplorable as to cause him physical injury or other serious health problems. Although Plaintiff claims he lost 15 pounds during the weeks at HCDC, he also testified that his claims were primarily emotional. Even if somehow a violation has been stated, these individual officers would be entitled to qualified immunity.

Plaintiff also claims that his medical care while housed at HCDC for the three-week period was constitutionally inadequate. Specifically, he missed dosages of his medication because Defendant Brown refused to let him go to the medical unit. The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). The undersigned finds no "exceptional circumstances" which would promote this medical neglect claim to a constitutional claim. For a three-week period, Plaintiff missed some of his dosages of medication due to Defendant Brown's refusal to let him go to medical. Even though Plaintiff claims Brown's actions were purposeful, according to Plaintiff, this failure to act is still not indicative of a deliberate indifference to a serious medical need under the circumstances, as no resulting serious harm occurred. Occasional missed dosages of medications during a three-week period do not rise to the level of a constitutional violation under the applicable law. *See Stockwell v. Kanan*, No. 11-10107, 442 Fed.Appx. 911, 914 (5th Cir. Sept. 28, 2011) ("An occasional missed dose of medication does not, without more, constitute deliberate indifference") (citing *Mayweather v. Foti,* 958 F.2d 91, 91 (5th Cir. 1992)).

Plaintiff also sued Sheriff Lewis and the other Defendants in their official capacities, and these claims are considered claims against the County of Hinds itself. *Bennett v. Pippin,* 74 F.3d 578, 584 (5th Cir. 1996). He specifically named Hinds County as a Defendant. Because Plaintiff cannot establish a constitutional claim under the circumstances of this case, no claim against Hinds County exists. *See Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir. 1997)(a constitutional violation is an essential element in a section 1983 claim against a municipality). Even so, liability cannot attach to a governmental entity simply because it employs a tortfeasor; it may be held liable only for acts for which it is actually responsible. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). Nor can government officials be held liable for the unconstitutional conduct of their subordinates under a "supervisory liability" or *respondeat superior* theory. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) citing *Monell,* 436 U.S. at 691.

Therefore, for the reasons set forth herein, it is hereby ordered that Defendants' Motion for Summary Judgment [54] is granted, and Defendants are hereby dismissed.

Final Judgment shall be entered, and the Complaint is hereby dismissed with prejudice.

SO ORDERED, this the 9th day of March 2016.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE